S.M. v City of New York

2026 NY Slip Op 03248

May 21, 2026

Appellate Division, First Department

Renwick, P.J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

S.M. etc. et al, Plaintiffs-Appellants,

v

City of New York et al., Defendants, New York City Health + Hospitals/Lincoln Medical Center, Defendant-Respondent.

Supreme Court, Appellate Division, First Judicial Department

Decided and Entered: May 21, 2026

Index No. 27844/20|Appeal No. 5927|Case No. 2024-03494|

Dianne T. Renwick

Tanya R. Kennedy Julio Rodriguez Iii Bahaati E. Pitt-Burke Kelly O'neill Levy

Pollack, Pollack, Isaac & DeCicco, LLP, New York (Brian J. Isaac and Jillian Rosen of counsel), for appellants.

Muriel Goode-Trufant, Corporation Counsel, New York (Diana Lawless and Rebecca L. Visgaitis of counsel), for respondent

Plaintiffs appeal from the order of Supreme Court, Bronx County (Alicia Gerez, J.), entered on or about May 14, 2024, which denied their motion for leave to renew their cross-motion pursuant to CPLR 3101(a) and Mental Hygiene Law § 33.13(c)(1) to compel disclosure of medical, psychiatric, and mental health records of defendant Shanice Martin maintained by defendant New York City Health + Hospitals/Lincoln Medical Center.

Renwick, P.J.

[*1]

This action arises from a tragic act that occurred on April 27, 2019, when defendant Shanice Martin (Martin) stabbed her two children, resulting in the death of one child and injury to the other, who survived. In 2020, the infant plaintiff and her father commenced this personal injury action against New York City Health + Hospital Corporation/Lincoln Medical Center (NYCHH or defendant), among others, alleging that NYCHH's employees negligently treated Martin when she presented to Lincoln Hospital on April 27, 2019, shortly before the stabbing. They allege that Martin had a history of mental illness for which she had been treated by NYCHH on "scores of previous occasions," and that NYCHH failed to detain Martin, call a report to the Statewide Central Register of Child Abuse and Maltreatment, or "take any other action to protect" the infant plaintiff.

In this action, plaintiffs also sued Martin, but she is, in effect, a nonparty to the action because she defaulted, and plaintiffs failed to procure a default judgment against her. Martin is currently incarcerated pursuant to criminal charges instituted against her regarding the same events that precipitated this civil action. Plaintiffs allege they have been unable to procure Martin's medical records from Lincoln Hospital as she has not waived the confidentiality of the records, she is unable or unwilling to do so, and NYCHH refuses to provide the medical records, asserting that the physician-patient and related privileges prevent it from disclosing the medical records. The question presented on this appeal is whether Martin's CPL 250.10 notice of intent to present a psychiatric defense, prior to interposing a defense of insanity at the criminal trial, effectuates a waiver of her CPLR 4504 and 4507 confidentiality privileges to permit plaintiffs in this action to review Martin's medical records. For the reasons explained below, we find that it does.

Factual and Procedural Background

On January 26, 2021, plaintiffs filed a notice to admit concerning disputed issues, such as whether NYCHH "was aware of and treated [Martin] for mental health issues" and whether Martin informed NYCHH staff "that she was experiencing homicidal thoughts." In response, NYCHH moved pursuant to CPLR 3103(a) for a protective order for Martin's medical records from Lincoln Hospital. As relevant, NYCHH argued that the physician-patient privilege (CPLR 4504), psychologist-patient privilege (CPLR 4507), and Mental Hygiene § Law § 33.13(c) prevented NYCHH from disclosing Martin's records without authorization or consent.

[*2]

On April 12, 2021, plaintiffs cross-moved pursuant to CPLR 3101(a) and Mental Hygiene Law § 33.13(c)(1) to compel the production of Martin's records. Plaintiffs argued that they were entitled to disclosure under Mental Hygiene Law § 33.13(c)(1) because "the interests of justice significantly outweigh the need for confidentiality" and they had "no other way" to obtain the records, which were "much needed" and "central" to their case. Plaintiffs also asserted that Martin waived the physician-patient privilege "because, upon information and belief, there have been extensive criminal court, family court, and ACS proceedings in which [Martin's] psychiatric conditions, and treatment and care have been placed in issue." Plaintiffs did not submit any records from those proceedings with the cross-motion but alternatively requested an in camera inspection of Martin's records to determine "a more limited disclosure."

NYCHH opposed plaintiffs' motion, arguing that Martin never waived her privileges or put her mental health in controversy. NYCHH also argued that plaintiffs' claims were conclusory and unsubstantiated; thus, disclosure would not be in the interest of justice. Finally, NYCHH argued that because plaintiffs failed to demonstrate either a waiver of privilege or the need for disclosure in the interest of justice, an in camera review was unwarranted.

In a decision and order dated April 27, 2022, the motion court granted NYCHH a protective order and denied plaintiffs' request to compel disclosure. The court found that plaintiffs were not entitled to disclosure in the interest of justice, and that "[Martin] has not waived her right to confidentiality." Plaintiffs appealed from that order.

While the appeal was pending, on February 21, 2023, plaintiffs moved for leave to renew their cross-motion, and upon renewal, to compel the production of Martin's records. The court conducted an in camera inspection of Martin's criminal records. Following the court's guidance resulting from that inspection, plaintiffs annexed two documents from Martin's criminal court case to their renewal motion: a notice of intent pursuant to CPL 250.10, dated November 29, 2021, and an "order to disclose and provide record," dated August 12, 2020 (Raymond L. Bruce, J.).

The notice of intent stated that Martin planned to present a psychiatric defense because "she suffers from a dangerous mental disorder which rendered her unable to appreciate the consequences of her acts or to know the wrongfulness of her acts."

[*3]

The order to disclose directed Correctional Health Services to "disclose and provide" all medical, psychiatric, and other records of Martin from July 2019 through the present to the Forensic Psychiatric Evaluation Court Clinic for a court-ordered mental health evaluation. In the order, the court found "that the interests of justice significantly outweigh the need for confidentiality" of Martin's evaluation pursuant to Mental Hygiene Law § 33.13, 42 CFR 2.65, and Public Health Law § 2785.

Plaintiffs argued that they did not possess records from Martin's criminal proceeding at the time they filed the cross-motion, although they admitted that they had "some records from ACS/family court proceedings but did not annex them to their motion due to the sensitive nature of the records." Plaintiffs further explained that they did not "annex documents from other proceedings" because they otherwise sustained their burden to obtain Martin's records, and because "counsel did not relish digging into criminal court proceedings to unearth unsavory and sensitive details" to present to the court.

In opposition, NYCHH argued that plaintiffs' supposed new evidence was available at the time they filed their original motion; plaintiffs failed to exercise due diligence to obtain those documents; and plaintiffs failed to offer a valid excuse for not submitting the documents in their original motion. NYCHH also asserted that plaintiffs' new evidence failed to show that Martin waived the confidentiality of her medical records by placing her psychiatric state in issue.

On March 26, 2024, before plaintiffs' motion to renew was decided, this Court rendered a decision and order on plaintiffs' appeal from the April 27, 2022 order (S.M. v City of New York, 225 AD3d 558 [1st Dept 2024]). This Court found that the motion court "properly determined that Mental Hygiene Law § 33.13(c)(1) does not apply to allow disclosure of [Martin's] hospital records in the interests of justice, absent [her] consent or express or implied waiver of the physician-patient privilege provided by CPLR 4504 and 4507." (id. at 559).

This Court modified the motion court's order to the extent of granting "plaintiffs' alternative request for in camera review to determine whether the records include information of a nonmedical nature, such as observations of Martin's conduct, language, and appearance and factual matters, which is subject to disclosure" (S.M., 225 AD3d at 558).

This Court, however, declined to review plaintiffs' argument on appeal "that [Martin] has waived her privilege by filing a CPL 250.10 notice of intent to present a psychiatric defense in a criminal proceeding pending against her" because it "was not raised before the motion court and depends on documents not in the record on this appeal" (id. at 559-560).

[*4]

Subsequently, on or about May 14, 2024, the motion court denied plaintiffs' motion to renew their motion to compel disclosure "as moot per the recent [d]ecision of" this Court. This appeal ensued.

Discussion

As a threshold matter, we perceive no procedural hurdle that precludes us from addressing the merits of the denial of plaintiffs' renewal motion to compel disclosure of medical, psychiatric, and mental health records of Martin maintained by NYCHH. As indicated, the motion court denied renewal because it was rendered "moot" by our prior decision and order in this case, which affirmed the motion court's order granting NYCHH's motion for a protective order and denying plaintiffs' motion to compel disclosure. As NYCHH concedes, plaintiffs' motion to renew is not moot. This Court expressly declined to review plaintiffs' argument concerning whether Martin's notice of intent to present a psychiatric defense in the related criminal proceeding waived her privileges in this civil action because the argument "was not raised before the motion court and depends on documents not in the record on this appeal" (S.M., 225 AD3d at 555-560).

NYCHH, however, argues that the renewal motion was still properly denied because plaintiffs failed to provide a reasonable justification for failing to include the newly submitted documents at the time of the filing of the original cross-motion to compel disclosure. We disagree.

A motion to renew must be "based upon new facts not offered on the prior motion that would change the prior determination" and must "contain reasonable justification for the failure to present such facts on the prior motion" (CPLR 2221[e][2], [3]). The movant must also show that it made diligent efforts to obtain the proffered new evidence (see Perretta v New York City Tr. Auth., 230 AD3d 428, 432 [1st Dept 2024]). However, "the rule is not inflexible and the court, in its discretion, may grant renewal, in the interest of justice, upon facts known to the movant at the time of the original motion" (Rancho Santa Fe Assn. v Dolan-King, 36 AD3d 460, 461 [1st Dept 2007]). "[E]ven if the rigorous requirements for renewal are not satisfied, such relief may still be granted so as not to defeat substantive fairness" (id.).

In this case, plaintiffs' motion to renew relied primarily on Martin's notice of intent to present an insanity defense. The notice of intent did not exist until November 29, 2021 (see N.Y. Park N. Salem Inc. v ADBH 22nd Floor Inc., 236 AD3d 573, 573-574 [1st Dept 2025] [finding that a new material fact that did not exist at the time of the prior motion satisfied CPLR 222(e)]). As fully explained below, the notice of intent would have also changed the court's prior determination. Thus, plaintiffs satisfied the renewal requirements, and we now examine the issue of whether Martin waived her physician-patient and psychologist-patient privileges by filing a notice of intent to present an insanity defense in the related criminal proceeding.

[*5]

Generally, medical records are protected from disclosure (see CPLR 4504 [physician-patient privilege]; 4507 [psychologist-patient privilege]; Mental Hygiene Law § 33.13[c] [privilege for patient information reported to the Office of Mental Health or the Office for People with Developmental Disabilities]). However, a patient can waive those privileges "either expressly by authorizing the record's release or implicitly by placing his or her mental condition in issue" (Cynthia B. v New Rochelle Hosp. Med. Ctr., 60 NY2d 452, 461 [1983]; see also Rega v Avon Prods., Inc., 49 AD3d 329, 329 [1st Dept 2008]). However, simply denying the allegations in a complaint does not constitute such a waiver (Dillenbeck v Hess, 73 NY2d 278, 288 [1989]).

In People v Al-Kanani (33 NY2d 260 [1973], cert denied 417 US 916 [1974]), the Court of Appeals reaffirmed the long-standing rule that "where insanity is asserted as a defense and . . . the defendant offers evidence tending to show his insanity in support of his plea, a complete waiver is effected, and the prosecution is then permitted to call psychiatric experts to testify regarding his sanity even though they may have treated the defendant" (id. at 264). In so holding, the Court explained that "the patient . . . disclos[ed] the secrets which the statute was designed to protect, thus creating a waiver removing it from the operation of the statute; and once the privilege is thus waived, there is nothing left to protect against (id. at 264-265 [internal citations omitted]). "'[W]hen a secret is out," the Court further explained, "it is out for all time and cannot be caught again like a bird and put back in its cage. The legislature did not intend to continue the privilege when there was no reason for its continuance, and it would simply be an obstruction to public justice"' (id. at 265 [internal ellipsis omitted], quoting People v Bloom, 193 NY 1, 10 [1908]).

[*6]

Such waiver of the physician-patient and related privileges in a criminal action generally carries over to a subsequent civil action, provided the defendant's mental condition remains at issue (see Dillenbeck, 73 NY2d at 288-289). This principle is based on the rule reiterated in People v Al-Kanani (33 NY2d at 265) that once the confidentiality of a communication is voluntarily destroyed by disclosure in a judicial proceeding, the privilege is waived for all future proceedings. This rule extends even to where the defendant in the criminal action is a nonparty in the civil action and the defendant's mental condition is still at issue, as illustrated in Webdale v North Gen. Hosp. (7 Misc 3d 947 [Sup Ct, NY County 2005], affd 24 AD3d 153 [1st Dept 2005]). In that case, "Kendra Webdale met her death when she was pushed in front of an oncoming subway train by Andrew Goldstein, a person with a lengthy history as a paranoid schizophrenic" (id. at 948). Webdale's estate brought a civil action against the institutions that treated Goldstein and sought Goldstein's medical and psychiatric records from them (id.).

The motion court found that Goldstein waived his right to confidentiality under CPLR 4504 in the civil action, to which he was not a party, because his medical and psychiatric records were used in his criminal trial where he raised an insanity defense (id. at 950, 952). Even though Webdale's estate "never actually established that any of Goldstein's records were placed into evidence," it produced "part of the parties' appellate briefs wherein the parties recap[ped] Goldstein's psychiatric history, culled, apparently, from Goldstein's medical and psychiatric records" (id. at 951). The court found that "[b]ecause Goldstein relied on his medical and psychiatric history to defend himself in his criminal trial, he opened up that information to the public, and so waived his physician-client privilege as to the records held by defendants" (id. at 955). It did not matter "that Goldstein's actual records were never made a part of his trial" because "'the form in which the information is sought to be introduced is irrelevant, as the privilege operates whether the information is contained in a patient's medical files or is sought to be introduced at trial in the form of expert testimony'" (id., quoting Dillenbeck v Hess, 73 NY2d at 284). In Webdale, we affirmed for the reasons stated by the motion court (24 AD3d 153).

[*7]

In this case, defendant argues that both Al-Kanani and Webdale support its argument that Martin did not waive the physician-patient and psychologist-patient privileges by the mere filing of a CPL 250.10 notice of intent to present a psychiatric defense. Defendant points out that in both Al-Kanani and Webdale, the criminal defendant asserted the insanity defense by disclosing evidence of his affliction to rebut the presumption of sanity. In contrast, the present case has not yet reached trial. All Martin has done thus far is provide the People and the court with written notice of her intention to present psychiatric evidence pursuant to CPL 250.10(2). Thus, defendant argues, no waiver took place since "the notice alone is not proof that [Martin] went on to offer an insanity defense or otherwise rely on her medical and psychiatric history [at trial]."

No appellate authority in New York State has ruled on the issue presented here of whether the mere filing of a CPL 250.10 notice of intent to present a psychiatric defense constitutes a waiver of the physician-patient and psychologist-patient privileges. The decisions of the trial courts are conflicting on this question. On the one hand, in People v Gorman (123 Misc 2d 370 [Sup Ct, NY County 1984]), the trial court held that the defendant's mere filing of a CPL 250.10[2] notice does not constitute a waiver of the defendant's physician-patient privilege because such filing "does not place upon the defendant any burden to come forward with such evidence . . . [n]or does it shift to the People any burden of disproving the defense of insanity." On the other hand, the trial court in People v Chavis (181 Misc 2d 540 [Sup Ct, NY County 1999]) found that Gorman was not viable because the "notice requirement was designed to allow the People an opportunity to obtain any mental health evidence necessary to refute a defense of mental infirmity" (id. at 543, quoting People v Berk, 88 NY2d 257, 265 [1996]). Thus, in Chavis, the trial court found that once the CPL 250.10 notice is filed, the "prosecution is clearly entitled to have its psychiatrist review the defendant's hospital records prior to his examination of the defendant" (id. at 543).

[*8]

We are of the view that, as People v Chavis correctly found, the filing of a CPL 250.10 notice of intent to present a psychiatric defense in the criminal case was sufficient to demonstrate that Martin placed her mental condition at issue so as to waive her privilege to confidentiality of her medical, psychiatric, and mental health records maintained by NYCHH. Indeed, what both defendant here and the court in Gorman overlooked is that at the time the Court of Appeals decided Al-Kanini in 1973, CPL 250.10 "required advance notice only of a defendant's intent to rely upon the insanity defense" (People v Berk, 88 NY2d at 262). The Legislature amended the statute in 1982 and "expanded the scope of the notice requirement to encompass evidence offered in support of the affirmative defense of extreme emotional disturbance as well as any other defense" (id.) As the Court of Appeals explained in Berk:

"[W]hile a primary function of CPL 250.10 is certainly to afford the People an opportunity to conduct their own examination of defendant, the legislative history of CPL 250.10 overwhelmingly establishes that it is not the statute's exclusive purpose. Inasmuch as the notice requirement was designed to allow the People an opportunity to obtain any mental health evidence necessary to refute a defense of mental infirmity, it follows that it applies to any mental health evidence to be offered by the defendant in connection with such a defense" (id. at 265).

Significantly, the duty to disclose medical records and related materials triggered by the filing of a CPL 250.10 notice has been strengthened and accelerated by CPL article 245 (Discovery), enacted in 2020 and updated through 2025. The interaction between CPL 250.10 and the new discovery regime under CPL article 245 has enhanced this duty in two significant respects: (1) discovery is now "automatic" and (2) requires the prosecution and the defendant to share evidence far earlier in the proceedings (see CPL 245.10). By contrast, the pre-2020 discovery statute (CPL article 240) required prosecutors to fulfill discovery obligations only after the defense attorney had made a demand in writing. Specifically, if the accused is incarcerated after arraignment, the prosecution has now 20 days to comply with CPL 245.20(1); if the accused is at liberty after arraignment, the prosecution has 35 days to comply (see CPL 245.10[1]). An additional 30-day period is permitted without motion if the materials are voluminous or not in the prosecution's actual possession, effectively extending these deadlines to 50 days and 65 days, respectively (id.).

[*9]

This accelerated timeline applies to all material, including medical or psychiatric records, in the possession of the prosecution (id.). In addition, the 2020 reforms and subsequent amendments have broadly defined discoverable material to include all items and information that are "relevant to the subject matter of the charges" (see CPL 245.20[1]). This covers medical, psychological, or psychiatric records that are relevant to a defendant's affirmative defense of mental disease or defect (id.).

Thus, since the CPL 250.10 notice requirement was designed to allow the People an opportunity to obtain any mental health evidence necessary to refute a defense of mental infirmity, the notice was sufficient to demonstrate that Martin waived her privilege to confidentiality regarding her medical, psychiatric, and mental health records maintained by NYCHH. To the extent that Webdale suggests otherwise, we clarify that a criminal defendant does not necessarily have to affirmatively disclose evidence of his or her mental condition to effectuate a waiver of the privilege where it is otherwise clear that the defendant has put his or her condition in issue thereby triggering a duty to disclose.

Indeed, consistent with our holding here, other courts have found that under certain circumstances, a criminal defendant waived any privilege applicable to that defendant's mental health records irrespective of whether any medical record had been disclosed. For example, in Szmania v State of New York (82 AD3d 1688 [4th Dept 2011]), the court held that a former patient's psychiatric hospital records for his condition at the time of an assault could be disclosed in a civil case because in the connected criminal case, the patient-defendant waived the privileges by pleading "not responsible by reason of mental disease or defect" (id. at 1690). Similarly, in Watton v Public Admr. of Kings County (2022 WL 617007, *3-4, 2022 NY Misc LEXIS 1070, *9-11 [Sup Ct, Kings County, Mar. 1, 2022, No. 805054/2019]) the court found that a criminal defendant, who raised her psychiatric condition as a mitigating factor for sentencing, waived her physician-patient privilege in a civil action. The reasoning underlying the waiver in Szmania and Watton is that once a criminal defendant attempts to use his or her mental condition to his or her advantage, as Martin purportedly seeks to do in this case as indicated by the notice of intention to present psychiatric evidence at her criminal trial, a waiver of confidentiality is triggered. The Court of Appeals has long established that the physician-patient and related privileges cannot be used both as a sword (to advance a claim) and a shield (to suppress evidence) in litigation (see Dillenbeck, 73 NY2d at 287; Koump v Martinith, 25 NY2d 287, 294 [1969]; see also Fisch, New York Evidence § 541 [2d ed]; McCormick, Evidence § 98 [3d ed]).

[*10]

We recognize that a defendant in a criminal action has the absolute right to forgo an insanity defense or similar defenses at any time during the criminal proceeding. In the event a defendant elects to forgo presenting evidence of an alleged mental disease or defect during a criminal trial, the People would be precluded from using the material contained in the subject hospital records. HIPAA may also restrict how a plaintiff's counsel handles the medical records while they are in his or her possession and would require them to dispose of such records once the case is over (see e.g. Crenshaw v Mony Life Ins. Co., 318 F Supp 2d 1015, 1028-1029 [SD Cal 2004], citing 45 CFR 164.512[e]). In addition, a defendant may petition the court for an order sealing his or her medical and psychiatric records pursuant to part 216 of the Uniform Rules for Trial Courts, which would require a showing of "good cause" (see e.g. Matter of R.R., 153 Misc 2d 747 [Sur Ct, Rensselaer County 1992]).

However, to hold that the physician-patient and related privileges are not waived by the filing of a notice of intent to present an insanity defense because the CPL 250.10 notice can be retracted at any time, would not further the policy purpose that the confidentiality privileges of CPLR 4504 and 4507 serve. These privileges serve to foster open and candid communication between doctor and patient during the process of diagnosis and treatment and to protect reasonable expectations of privacy (see Matter of Grand Jury Investigation in New York County, 98 NY2d 525, 529-530 [2002]). The privileges apply only to that which the patient intended as confidential (see Matter of Farrow v Allen, 194 AD2d 40, 42-43 [1st Dept 1993]). Once the patient has waived the privilege of confidentiality, whether by explicit choice or by placing his or her condition in issue, it cannot be said that the patient still intended the records to be confidential, nor is there any further reasonable expectation of privacy (see Dillenbeck, 73 NY2d at 287; Cynthia B., 60 NY2d at 461; see also Rega, 49 AD3d at 329).

Accordingly, the order of Supreme Court, Bronx County (Alicia Gerez, J.), entered on or about May 14, 2024, which denied as moot plaintiffs' motion for leave to renew their cross-motion pursuant to CPLR 3101(a) and Mental Hygiene Law § 33.13(c)(1) to compel disclosure of medical, psychiatric, and mental health records of defendant Shanice Martiin maintained by defendant New York City Health + Hospitals/Lincoln Medical Center, should be reversed, on the law, the motion for leave to renew granted and, upon renewal, plaintiffs' cross-motion to compel granted, without costs.

Order, Supreme Court, Bronx County (Alicia Gerez, J.), entered on or about May 14, 2024, which denied as moot plaintiffs' motion for leave to renew their cross-motion to compel, reversed, on the law, the motion for leave to renew granted and, upon renewal, plaintiffs' cross-motion to compel granted, without costs.

[*11]

Opinion by Renwick, P.J. All concur.

Renwick, P.J., Kennedy, Rodriguez, Pitt-Burke, O'Neill Levy, JJ.

THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: May 21, 2026